Research. You may begin, Counsel. Thank you, Your Honor. My name is John Klinkin, Your Honor, and I represent CRC. Before addressing what I believe is the central issue in the case, which is, does the settlement dispose of all claims, I'm happy to address any of the preliminary questions the Court may have, the panel may have. No, my question is why you guys didn't write out your settlement and then, you know, articulate it a lot better before the Court. There's the rub. There is the rub. Don't we have a situation, I'd like to cut to the heart, because I'm highly sympathetic, having settled cases in open court myself, and in this case, you have the district judge before whom you appeared, announced your settlement on the heels of the prior settlement, said we've settled the case, and the judge then terminated proceedings, making it clear she thought all things were done. So given that there are ambiguities in the record as to what you all had agreed to, what's our position as an appellate court to look over her shoulder and say, oh, we can assume what all had gone on, what she had before her, including your May 10th settlement paper and the injunction and all of that? What are we supposed to do as an appellate court to second-guess that? I think I would answer first that your review is under an abusive discretion standard. Obviously, I'd prefer it be de novo, but I think the law is pretty clear that it's an abusive discretion issue. Secondly, I hope it's clear that neither one of us intended that there would be a resumption of the trial should the settlement fall through. I mean, we both take the position that there is a full, complete and final settlement, and the only issue is, does it extend to all claims that could have been filed, or to put it under Rule 13 language, does it apply to permissive counterclaims as well as compulsory counterclaims? Well, another way of putting it is that there were mutual releases that release all claims known or should have been known at the time, which is the language used in the other settlement that you referenced coming or that was referenced coming into making the presentation to the district court. I fully recognize that, and we have this sort of incongruence in the other settlement, because you have the language about dismissing all claims that would or could have been filed by either Opticent or the Pandela chefs. Right. Both parties. The two of the three parties. But there was mutuality in that settlement agreement. But what we also had that was sort of incongruent with where we end up is the specific reservation in the injunction that provides specifically that CRC, and lest I mislead the Court, that CRC as defined in the injunction includes all three parties, Opticent, Pandela chef, and the remaining party of CRC. But CRC reserved its rights, and both parties agreed that nothing in the consent judgment shall be construed to prohibit it from asserting its patent rights and from taking all legally permissible steps necessary to protect against alleged infringement of CRC's actual patents. So we have in that other settlement a dismissal of all claims, but we also have the reservation of the patent rights. But it wasn't reserving by the terms of the settlement, wasn't reserving the right to continue any patent claim that could have been brought at that time, right? How could you reconcile that? The reconciliation is actually in the patent law itself, because CRC, as the exclusive licensee of the patent during a period of time when an infringement of a patent is not considered a patent, is not considered a patent. It's the cause of action. And CRC is the one that was not a party to the prior release. Now, I know that there's two the CRC is used in two different senses, but in the release itself, the releasing parties in the other settlement were Opticent and Pendelechev. The three parties, those two and CRC, were party to the injunction. So what was left open was the monetary claim against CRC only. And so our position is that there was this open claim that CRC had not agreed in the prior settlements to a dismissal of all claims that could have been filed, and it was never discussed among counsel. And when you get into the niceties of patent law, that becomes a pretty significant issue. What I'd like you to address is Judge Bolton's statement. It is inconceivable. It's a pretty strong word. Under the facts demonstrated throughout the course of this litigation, for anyone to reasonably believe that in agreeing to the settlement, CRC could preserve a right to the patent is a significant consideration, but was not. This is particularly true in the light of Dr. Pendelechev's testimony that CRC had no assets and is no longer the licensee of any patents. I know that the critical point is not the last point, but if I may, I'd like to address the last point of that. The fact that they are no longer the patent holder is of no consequence to their right to assert a patent infringement claim. Even exclusive licensees who subsequently transfer their rights or lose their rights still have a right to enforce their patent obligations. And if that's an issue with the Court, I can cite a case out of the Northern District of Illinois that addresses that. But the more pertinent part of that is the inconceivable, that they would be involved in this litigation and not intend. It could have been asserted, but was not, right. Yes. We submit that, number one, that that was an abuse of discretion for her to reach that conclusion, because it ignores what's in the case. It ignores the fact that the potential counterclaim, which is way beyond the relief that could have been obtained, even if they had gone forward to trial. Could any patent infringement matter of any kind been asserted in this litigation? Sure. And it wasn't. It could have been asserted either by the plaintiff, if they want. But CRC didn't assert any. Correct. Isn't it fair for the judge to look at that and say, what are you trying to preserve here? You had your opportunity. You didn't even try to assert any assets. You want to start another case? Yes. That's exactly the situation that CRC has a right to do. Because they were not required to assert — well, if they are required to have asserted it as a counterclaim in this case, then it's a compulsory counterclaim. Case is closed. But the problem is that the Court has jumped the step of even having that counterclaim in front of it. If I can hypothecate for a second, if the release had been signed the way we proposed it be signed, and leaves open claims that could be filed, then if Dr. Pendelishev ever felt that he had a basis for such a claim, and if a lawyer under Rule 11 could in good faith file such a claim, that complaint would have been compared to what happened in this case to see if the issues were inextricably interwoven. And if they were, it would have been a compulsory counterclaim. But what happened as a result of this process is that we jump a step ahead and say, we're not even going to let you submit that new complaint. We're going to say anything that you could have filed is out the window. And we suggest that under the Supreme Court decision, which is referenced in this — Wait, wait, wait. Time out. Sure. I think I slipped a cog. You said that if, without this language in, you had brought a new action, and if they could prove it was a compulsory counterclaim, you would be foreclosed. That's right. Okay. And so what was added by the could-have-been-brought language here, that it could have been this sweeps in, extends to permissive counterclaim? Exactly. Exactly. That's the problem, is that it essentially sweeps in something that wasn't ever discussed or certainly intended. And the problem, if I can step back, is this. If that was what was intended, if, in this litigation, it was intended by St. Gobain that there be a declaration that they had not infringed on the patent, they can file such a count. They could have filed a counterclaim, but if they had not, then the counterclaim would have become compulsory. Then if somebody sues and says, we didn't infringe on your patent, the matter is at issue, the counterclaim becomes compulsory to say, yes, you did, here's the patent infringement. But in this case, we didn't have that. This seems very odd. When you were being sued for money damages, if you did have a defense that could show that, in fact, there had been patent infringement, it wasn't raised. I mean, this is a very odd case. And I think, frankly, that arises by virtue of the fact of the difficulties of proving patent infringement, because it's an expensive proposition. It's one that the lawyer under Rule 11 has to have sufficient evidence to substantiate. It's one that we requested, actually requested in the discovery phase for information about the design of their product, and they objected to it and said it's irrelevant. I grant you that had it been known and had it been available, it could have been asserted as an affirmative defense. I would suggest to you that it would have been an affirmative defense to only part of the defamation claim. Well, I understand your client said a lot of bad things, but it does seem just almost against human nature that they didn't try to establish the fact that, in fact, there was infringement. Your client just went off saying these things were infringed and they didn't have any proof? Well, we may be getting a little bit beyond what's in the record, but I can tell you this, that it was a matter that we went into in discovery, and that we, in responding to the motion for summary judgment, did the best we could. So we were not in a position really to come forward with any more than we did come forward with. But I would hope that that's not seen, that the distinction between there being patent infringement and the party being able to prove the patent infringement would be recognized. I hear you saying as you're trying to preserve the option to do something that doesn't make any sense for you to do. Well, if I could recast what you're saying. I don't really understand what your end game here is. My end game is to keep my client's potential claim of patent infringement alive. Potential claim? Because it doesn't sound to me like you have one. I mean, you keep putting all these qualifiers in there, lawyers, rule 11, evidence, we don't have any, but. So you're trying to preserve something that doesn't exist. Well, and it may not ever materialize. I grant you that. Are you saying it couldn't have been brought? Could not have? Yes. Well, can I answer it two ways? Procedurally, could it have been brought? Absolutely. Yes. Yes. Substantively, could it have been brought is a different issue, because you didn't have a case. Well. Right? And now you're trying to preserve the case that you don't have. Well, what I'm driving at, if I can just close the loop, is this settlement agreement does not bind you to any future infringements. So you're concerned about whether you're going to find anything that would have given you a basis to bring a patent infringement case prior to the date of the settlement. Post the date of the settlement, the settlement doesn't purport to foreclose you from bringing an infringement. You're right on track. So you're looking for this somehow that you're going to find something that says, gee, we really could have brought a solid infringement case back then. Yeah. And if he comes across that kind of evidence, then he faces the statute of limitations issues. He faces any other defense that they may want to raise. But the point is, he didn't give it up voluntarily by the settlement. I don't know quite why you're fighting so hard for this, unless there's something we're not seeing, like you intend to bring a suit and try to get them to pay you off to get it dismissed. I mean... No. It's nothing of that sort. To be cynical, if one is cynical, we have to think there's some hidden nefarious motive here. Well, and I understand that. I mean, I'm sure you read it, you scratch your heads and say, what do they really want? That's why I ask you, what's the end game here? What are we doing? The end game is that my client feels as if a claim of his that he values highly has been given up without his consent. It's that plain and simple. Without his consent and without adequate compensation. No compensation for it, to be sure. But in the legal niceties of all of this, what has happened is that what would have been a potential or permissive claim has been swept out the door. And, you know, if we were just looking at res judicata, if we were looking at compulsory counterclaim issues, we wouldn't have to be here. I mean, they could not have insisted on this provision. See, I think that's why the judge said it's inconceivable you're trying to protect something that I don't find anywhere in the case. But, you know, as the trial court and you are, you're not privy to all of the communications that we have with the client about how far you can go and what the quantum of evidence is and those kinds of things. Do you have anything else you'd like to tell us now or would you like to reserve your time to rebut the other side? You can go ahead if you'd like. I did request five minutes rebuttal, so I better save that time. Thank you, Your Honor. Good morning. My name is Jeffrey Wolf, and I'm appearing today on behalf of Appley St. Gobain Industrial Ceramics. It's apparent from the panel's comments that the panel is very familiar with the trial record, so I'm going to try to be brief in my comments. Well, why didn't you get up there and make some articulate statements as to exactly what the settlement was? What I recited on the record was, in all candor, what counsel had discussed in the hallway. We did not have settlement negotiations prior to that particular day, which was the second day of trial. And I accurately recited for the court what we had discussed concerning the payment of money and the dismissal of claims. Judge Bolton, at the commencement of her remarks, stated that she wanted our settlement on the record because she didn't want us to come back at a later point and resume any aspect of the litigation. Mr. Kleekin, in response to what I recited on the record, then said, well, we're talking about all claims. So the best that I can answer is that I accurately described what we had. Well, do I hear you saying you didn't agree on the element of the settlement that was then added by the judge? We did agree to that element of the settlement, and I think you have to go a little bit further to look at how the settlement was determined, how the intention of the parties was determined by the judge, how the court arrived at the conclusion that the parties had mutually intended there to be releases. And part of that is based on the prior settlement. And I think that there's a significant threshold issue that can't be overlooked here concerning the prior settlement. Well, in addressing that, what you said to the court is that, you know, it's not just a matter of the settlement. There had been a prior settlement on non-monetary elements. That's the May 10 settlement, correct? Correct. Okay. And then you went on to say the remaining defendant, CRC Corporation, has agreed to pay the plaintiff the sum of $250,000, that's its obligation, in exchange for a release and dismissal with prejudice, which is your obligation. Where's the reference to releases or a mutual release? Well, and that's where I wanted to back up for a moment and talk about the May 10 settlement, or August 10 settlement, actually. And that is because that settlement involved Opticent, who was the patent holder. And in that settlement agreement, there was a release of any and all claims that could have been asserted. So as a threshold issue here, I'm having trouble understanding counsel's reference to the fact that CRC had any rights to assert. It was our understanding that those rights had been released. CRC was a licensee of the patent, and if Opticent had, as the licensor, had no rights to assert, then certainly its licensee had no rights to assert them either. So what happened is the court, in exercising its equitable power to enforce settlements and to fully terminate proceedings, looked at all of these circumstances and recognized that it was in, that the parties intended to terminate their longstanding controversy concerning this issue of patent infringement. Well, no, wait a minute. You're saying, as I understand it, that the licensor, patent holder, had released its claims in the August 10 settlement. Is that right? Yes, that's right. Okay, but it also had, there was also the stipulated injunction that allowed CRC to pursue patent infringement claims. So what was it preserving, if you felt there were no licensee provisions to licensee claims? The stipulated injunction contained a statement that was insisted upon by CRC that was a negotiated stipulation, and it preserved, but it had no rights to assert any patent infringement against anyone, and it still doesn't have any rights to assert any patent infringement against anyone. So therefore, from the perspective of my client, it was really a non-issue. But this was something that Dr. Pandelicev felt was somehow an important condition of his willingness to enter into that agreement. As best as I can explain it, because I don't believe as a matter of law that CRC has any better rights than OptiSent would have had under the circumstances. The sleeves out of your vest provides those, as far as you're concerned. Pardon? You're giving them the sleeves out of your vest, right? Correct. But I do believe that the Court, in taking into account the totality of the circumstances, looked at everything and said this is a case that involves the assertion of some potential claim at some point in the future. And it's futile for any number of reasons. So on the basis of that, we believe that... So is it your understanding, then, given that the licensor, when you made the representation to the Court, that there was a release and dismissal, it was a release and dismissal from your client to CRC, and that you didn't seek or consider the need for a release from CRC with respect to the patent infringement? To whatever had been reserved in the stipulated injunction, because you didn't think it had any effect? That's correct. I'm happy at this point to answer any further questions that any member of the panel would have. Thank you, Counsel. Thank you. It seems to me that St. Gobain is conceding that it wasn't a part of the settlement. It wasn't a negotiated term. It wasn't even contemplated. That's what I thought I heard. And I agree with him. Because they didn't think they had to, that it had already been taken care of. And if that's it, the solution is, if Dr. Kondelshev ever files a lawsuit, bring out that other release and say, you're barred, son, from doing it. But we weren't in that fight. We end up in a fight over this release. And if CRC had no rights to assert, why insist upon this provision? And I submit to you that what it is, is overreaching on this settlement agreement. And they're trying to get something that wasn't bargained for. What's the practice pointer here for our law clerks? What should have been done that wasn't? Somebody should have said, subject to reviewing this in writing or something like that? In looking at these motion to enforce cases, you do see lots of cases that talk about, this is subject to final written approval. And frankly, we should have done that. And I'm sure we both have talked to our law firms about that in our in-house CLEs. But that aside, my client feels like he's been deprived of something. Now, whether that ever materializes, whether it ever really has value, is another issue for another day for another court. And we submit that this court, Judge Bolton, abused her discretion by extending that far. I understand why she did it. Had I been sitting on the bench, I would want to have disposed of all this litigation as well. But the problem is, this was a defamation case. It wasn't a patent infringement case or a declaration of non-patent infringement. It was a defamation case. And to walk out of a settlement of a defamation case saying, oh, by the way, you just lost any claim you might ever have to file a patent infringement claim when it's preserved in the injunction, just really wasn't right. Plaintiff should not be forced into a second lawsuit because the doctor, the principal of CRC, believes there was a patent infringement, even though he has no evidence of it. Well, and if that's the case, then they should come forward and say it. And then Dr. Pandelechev can be confronted with it at the time of the settlement and say, doctor, if you want the case settled, if you want the defamation case settled, here's one of the terms. And that's why we have these things in writing. That's why we announced it in open court. And what the court should enforce is what was announced in open court. And this wasn't part of it. And so it is that to which we object. We think, with all due respect to a very capable trial court, that she abused her discretion by extending the release to include all claims that could have been filed. Thank you, and unless there are any other questions. Thank you. Thank you. Good morning, Your Honor. Good morning.
judges: B. Fletcher,trott, Fisher